IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT PEDOCKIE,<br><br>     Petitioner,<br><br>  v.<br><br>ALFRED BIGELOW, Warden at the Utah State Prison,<br><br>     Respondent. | **MEMORANDUM DECISION AND ORDER OF DISMISSAL**<br><br><br>Case No. 2:11-cv-01028-CW<br><br>District Judge Clark Waddoups |

   This matter is before the court on Petitioner's petition for writ of habeas corpus filed on November 8, 2011 under 28 U.S.C. § 2254.  The Petitioner, Robert Pedockie, is in state custody and represents himself pro se. The Court has carefully considered the petition, the response filed by Respondent, Petitioner's reply, and all relevant rules and statutory provisions.  Because the Petitioner is pro se, the court interprets the petition and supporting memoranda liberally. Nevertheless, Petitioner is required to meet all of the required elements to state a claim for relief. *United States v. Lee Vang Lor,* 706 F.3d 1252, 1256 (10th Cir. 2013.) Now being fully advised, it is the judgment of the court that Petitioner's habeas claims either fail to raise a federal question or are procedurally defaulted.  The court therefore DISMISSES the petition.

**Procedural Background**

   <u>First Trial</u>. Petitioner was accused of having kidnapped Nicole Sather on January 3, 2001. *See State v. Pedockie,* 2004 UT App 224, ¶ 2, 95 P.3d 1182 ("*Pedockie I*").  He was

subsequently charged on February 13, 2001 with one count of aggravated kidnapping, a first-degree felony. *Id.* at ¶ 3.  On April 10, 2001, Petitioner filed a notice that he was invoking the 120-day disposition provision of the Utah Code of Criminal Procedure.  *Id.* at ¶ 4; Utah Code Ann. § 77-29-1 (West 2001).[1]  Petitioner subsequently filed a motion to dismiss for denial of a speedy trial based on the 120-day disposition notice.  *Id.* at ¶ 14.  In an order entered on August 26, 2002, the trial court denied Petitioner's motion.  *Id.* at ¶ 20.  Petitioner represented himself at trial after the trial court determined that he had knowingly and voluntarily waived his right to counsel.  *Id.* at ¶ 21.  Petitioner was convicted in October 2002 and sentenced in February 2003. The trial court imposed an indeterminate prison term of ten years to life and ordered that the sentence run consecutively to the sentence Petitioner was already serving.  *Id.* at ¶ 19.

First Direct Appeal.  Petitioner timely appealed his conviction, arguing that the trial court erred in concluding that he had knowingly and voluntarily waived his right to counsel and in denying his motion to dismiss on the ground that the State violated his speedy trial rights under Utah's 120-day disposition statute.  *Id.* ¶ 4.  The Utah Court of Appeals rejected Petitioner's speedy trial claim, but reversed his conviction on the waiver of counsel claim.  *See id.* at ¶¶ 29, 41.  The State sought certiorari review before the Utah Supreme Court on the waiver of the right to counsel claim, which was granted, but neither the State nor Petitioner sought review of the Court of Appeals decision denying Petitioner's 120-day speedy trial claim.  *See State v. Pedockie*, 2006 UT 28, ¶¶ 22-23, 137 P.3d 716 ("*Pedockie II*").  The Utah Supreme Court

---

[1]Section 77-29-1 was repealed on February 23, 2007.  *See* 2007 Utah Laws 101.

affirmed the Court of Appeals decision and Petitioner's case was remanded for a new trial.  *Id.* at ¶ 52.

<u>Second Trial</u>.  In February 2007, Petitioner was again tried and convicted of aggravated kidnapping.  As before, the trial court imposed a sentence of ten years to life and ordered the sentence to run consecutively to the sentence Petitioner was already serving.  *See State v. Pedockie*, 2008 UT App 417, *1, 2008 WL 4899186 ("*Pedockie III*").

<u>Second Direct Appeal</u>.  Petitioner timely appealed from his conviction following the retrial.  He raised two claims of error, namely, that the trial court improperly admitted evidence of his prior bad acts and failed to give him credit for time served.  *Id.* at *1-3.  On November 14, 2008, in an unpublished memorandum decision, the Utah Court of Appeals affirmed Petitioner's conviction.  *Id.* at *3.  Petitioner's petition for writ of certiorari to the Utah Supreme Court was denied on March 4, 2009.  *See State v. Pedockie*, 207 P.3d 432 (Table) ("*Pedockie IV*").

<u>State Post-Conviction Petition</u>.  On September 21, 2009, Petitioner filed a state post-conviction petition under Utah's Post-Conviction Remedies Act ("PCRA").  He raised numerous claims alleging due process violations, prosecutorial misconduct, trial court error, and ineffective assistance of trial counsel.  In addition, Petitioner also claimed that the delay longer than 120 days prior to his retrial following remand violated his due process rights.  On June 30, 2010, the post-conviction court dismissed all of Petitioner's claims as either frivolous or procedurally barred under the PCRA because they could have been raised on direct appeal, but were not.  *See Pedockie v. State*, 2010 UT App 298, *1, 2010 WL 4264440 ("*Pedockie V*").

Appeal from Dismissal of Post-Conviction Petition. Petitioner filed a timely notice of appeal from the dismissal of his post-conviction petition.  Although not raised in his petition, in his docketing statement Petitioner suggested that his court-appointed appellate attorney was ineffective for failing to raise all the issues Petitioner wanted raised.  *Id.*  The Court of Appeals summarily disposed of Petitioner's appeal on October 28, 2010 stating that "each issue raised by [Petitioner] was known to him at the time of his direct appeal and could have been raised at trial or in his direct appeal but was not."  *Id.*  The Court of Appeals also refused to consider his ineffective assistance of appellate counsel claim because Petitioner "did not sufficiently raise the issue of ineffective assistance of appellate counsel in his original petition for post-conviction relief; accordingly, we cannot consider the issue on appeal."  *Id.*  On March 31, 2011, the Utah Supreme Court denied Petitioner's petition for writ of certiorari.

Current Federal Habeas Petition.   On November 8, 2011, Petitioner filed his current federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   (Dkt. No. 1.) Respondent responded to the petition on January 17, 2013 and requested that the petition be dismissed.  (Dkt. No. 18.)  Petitioner filed a reply on April 1, 2013.  (Dkt. No. 26.)

## Factual Background[2]

Nicole Sather began corresponding with Petitioner by telephone and with letters in 1999 while he was in prison.  After he was released in September 2000, Petitioner gave Nicole rings, they talked of marriage, and he often stayed with her in her home.  By October, however, the

---

[2] The statement of facts is based upon facts set forth in the State's Brief on the Appeal for Conviction of Aggravated Kidnapping which contains citations to the trial record.  (Dkt. No. 18-10.)  Petitioner has objected to the Proposed Order submitted by Respondent, but did not object that the statement of facts did not accurately reflect the record.  (Dkt. No. 33.)

relationship began to deteriorate and in November it came to an end.  Still, Petitioner continued

to call her and leave messages.  In the early morning hours of January 3, 2001, shortly after

Nicole got home from work, Petitioner knocked on her door.  She talked to him through the door

and asked him to leave, but he insisted on coming in to get the rings he had given her.  Nicole

opened the door and Petitioner came in.  Someone else then knocked and Petitioner opened the

door.  It was Petitioner's cousin, Justin Pedockie.  Justin came in, walked to the kitchen, and

disconnected Nicole's phones.

Nicole hurried to her bedroom to get the rings.  She gave the rings to Petitioner and told

him to leave, but he insisted that she go for a ride with him.  When she objected, Petitioner

gestured to Justin, who got out of the truck and walked up the entryway holding a black gun with

a banana clip.  Petitioner told her to get in the truck or he would shoot her on the spot.  Feeling

she had no choice, Nicole got in the truck with the two of them.  As they drove, Petitioner

repeatedly threaten to kill Nicole.  They exited the freeway at Payson and traveled to a horse

farm where Petitioner's friend Karen resided.  Somewhere on or near the farm, Petitioner parked

the truck in the middle of an isolated road, and he and Justin got out to relieve themselves.

Petitioner told Justin not to shoot Nicole "until she's in the well," which was located a short

distance away.

Nicole, who was still in the truck, noticed that Petitioner had left the keys in the ignition

and so she moved over to the driver's seat in an attempt to escape.  Petitioner noticed her

movement and they began to fight.  Nicole was able to start the truck, put it in gear, and pushed

on the gas, but Justin then shot into the truck and the truck stopped.  Nicole, sitting alone in the

5

cab, grabbed a mobile phone from the glove box hoping to call someone.  Petitioner saw her, ran around the truck, jumped on top of her, grabbed the phone, and started choking her and threatening to kill her.  Petitioner and Justin then got back in the truck with Nicole and they drove away.  Petitioner continued to threaten Nicole as he drove.  After driving around, Petitioner dropped Justin off in West Valley and then continued driving toward Ogden.  Eventually, he drove Nicole back to her home.

While at Nicole's home, Petitioner and Nicole fell asleep.  After Petitioner awoke, he ordered her back in the truck and he drove toward Park City.  Petitioner continued threatening to kill Nicole as he drove.  When he stopped for gas at Bell's gas station at the Silver Creek junction, Nicole believed this would be her last chance to escape.  As they were leaving the station, she saw a set of stairs.  She bolted up the stairs, which led to a group of showers, and hurried into one of them and shut and locked the door behind her.  After 20 minutes she came out and saw Petitioner driving his truck over the freeway interchange.  Someone had called police and a Summit County police officer was dispatched to the gas station to pick up Nicole.

On February 13, 2001 Petitioner was charged with one count of aggravated kidnapping, a first-degree felony.

## Discussion

## I.    Petitioner's state speedy trial claim fails to raise a federal question and is procedurally defaulted.

In his first claim for relief, Petitioner asserts that the trial court failed to dismiss the charges against him after expiration of 120 days from the time he filed his 120-day disposition

notice and request for a speedy trial pursuant to Utah Code Ann. § 77-29-1 (West 2001).  *See*

Habeas Pet. at 7.  Therefore, he argues, his constitutional rights to a speedy trial were violated

and the trial court lacked jurisdiction to hold a trial on the charges against him.  *Id.*

### A.  No federal question is presented.

Petitioner's claim only alleges a violation based on state law and, therefore, it fails to

raise a federal question.  While Petitioner asserts that his *constitutional* rights were violated, his

argument establishes that he is not, in fact, alleging a violation of his federal constitutional

speedy trial rights.  First, in support of this claim, Petitioner neither mentions nor cites to the

United States Constitution or any other law of the United States.   Second, unlike Sixth

Amendment speedy trial claims, which involve a determination of the "[l]ength of delay, the

reason for the delay, the defendant's assertion of his right, and prejudice to the defendant,"

*Barker v. Wingo,* 407 U.S. 514, 530 (1972), Petitioner's entire argument is based on a

mathematical calculation involving the state 120-day disposition statute.  *See* Habeas Pet. at 7.

The United States Supreme Court has "stated many times that 'federal habeas corpus relief does

not lie for errors of state law.'"  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v.

Jeffers,* 497 U.S. 764, 780 (1990)).  *See also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal

court may not issue the writ on the basis of a perceived error of state law.").

The Supreme Court has repeatedly emphasized "that it is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions.  In conducting

habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."  *Id.* at 67-68 (citing 28 U.S.C. § 2241).

7

Because Petitioner's claim is based solely on an alleged violation of a state speedy trial statute, it does not raise a federal question. Therefore, further federal habeas review of this state-law-based claim is unwarranted. *See Larson v. Patterson*, 2:09-CV-989-PMW, 2011 WL 129485 (D. Utah Jan. 14, 2011) (unpublished) ("Petitioner's first argument that the trial court should have, under Utah's speedy-trial statute, dismissed the charges against him is based entirely on state law. . . . Therefore, this Court will not further consider this state-law-based argument."). *See also Scott v. Murphy*, 343 F. App'x 338, 340 (10th Cir. 2009) (rejecting petitioner's speedy trial claim that "involve[d] purely matters of state law."); *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) ("Violation by state officials of a state speedy trial law, taken alone, does not present a federal claim reviewable on habeas petition."); *Williams v. Chrans*, 894 F.2d 928, 937 (7th Cir. 1990) (state appellate court's decision on alleged violation of state 120-day speedy trial statute was not subject to federal habeas review).

### B. The claim is procedurally defaulted.

In addition, Petitioner's claim that Utah's 120-day speedy trial statute was violated prior to his first trial is also procedurally defaulted because it was never presented, and cannot now be presented, to the Utah Supreme Court. A state prisoner seeking federal habeas relief must first exhaust state remedies with respect to all claims presented to the federal court. *See* 28 U.S.C. § 2254(b) & (c). *See also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Miranda v. Cooper*, 967 F.2d 392, 397 (10th Cir. 1992). "The exhaustion requirement is satisfied if the issues have been 'properly presented to the highest state court, either by direct review of the conviction or in a

postconviction attack.'" *Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) (quoting *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994)).

Following Petitioner's conviction and sentence after his first trial, he raised a claim on direct appeal before the Utah Court of Appeals that the State violated his speedy trial rights under Utah's 120-day disposition statute. *See Pedockie I*, 2004 UT App 224 at ¶ 4. The Court of Appeals rejected Petitioner's claim, but reversed his conviction on the ground that the trial court failed to establish that Petitioner knowingly and intelligently waived his right to counsel. *See id.* at ¶ 41. The State sought certiorari review before the Utah Supreme Court on the waiver of the right to counsel claim, but neither the State nor Petitioner sought review of the Court of Appeals decision denying Petitioner's 120-day speedy trial claim. *See Pedockie II*, 2006 UT 28 at ¶¶ 22-23. Therefore, the 120-day speedy trial claim raised in the context of Petitioner's first trial, which he now raises in his federal habeas petition, was never presented to the Utah Supreme Court, and therefore was not exhausted.

Nevertheless, a petitioner is deemed to have exhausted his state remedies with respect to a federal habeas claim if state relief is no longer available him. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) ("The requisite exhaustion may nonetheless exist, of course, if it is clear that [petitioner's] claims are now procedurally barred under [state] law."). That is, "if state-court remedies are no longer available because the [petitioner] failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). *See also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (a "habeas petitioner who has defaulted his federal claims in state court meets the

9

technical requirements for exhaustion [because] there are no state remedies any longer 'available' to him.").

But, "if a petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred, then the claim is procedurally defaulted." *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998) (citations and quotation marks omitted). *See also Parkhurst v. Shillinger*, 128 F.3d 1366, 1370 (10th Cir. 1997) ("Where the reason a petitioner has exhausted his state remedies is because he has failed to comply with a state procedural requirement for bringing the claim, there is a further and separate bar to federal review, namely procedural default."). "In other words, when federal habeas claims 'are "technically" exhausted because . . . [petitioner] allowed his state law remedies to lapse without presenting his claims to the state courts . . . [,] there is no substantial difference between nonexhaustion and procedural default.'" *Jones*, 163 F.3d at 296 (quoting *Magouirk v. Phillips,* 144 F.3d 348, 358 (5th Cir.1998)). *See also Woodford*, 548 U.S. at 93 (technical exhaustion "does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the [petitioner] generally is barred from asserting those claims in a federal habeas proceeding.").

In Petitioner's case, he can no longer seek relief in state court alleging a violation of his 120-day speedy trial right as it applies to his first trial. After the Utah Court of Appeals rejected this claim, his avenue for relief was to seek certiorari review with the Utah Supreme Court. He opted not to do so. At that point, his only alternative was to file a petition for post-conviction

relief indirectly challenging the Court of Appeals decision by claiming that his appellate counsel was ineffective for failing to seek certiorari review of the 120-day speedy trial claim.[3]

Under the PCRA, a petition for post-conviction relief must be filed "within one year after the cause of action accrue[s]." Utah Code Ann. § 78B-9-107(1). Given the facts of Petitioner's case, his cause of action accrued on the "last day for filing a petition for writ of certiorari in the Utah Supreme Court . . . if no petition for writ of certiorari is filed." *Id.* § 78B-9-107(2)(c). The Court of Appeals' decision on Petitioner's 120-day speedy trial claim became final on July 1, 2004. Petitioner had 30 days from that date to seek certiorari review with the Utah Supreme Court. *See* Utah R. App. P. 48(a) ("A petition for writ of certiorari must be filed with the Clerk of the Supreme Court within 30 days after the entry of the final decision by the Court of Appeals."). Because he did not seek certiorari review, Petitioner's cause of action accrued on August 2, 2004. Consequently, any post-conviction petition would have been due no later than August 2, 2005. Thus, at this point, any attempt by Petitioner to either directly raise his 120-day speedy trial claim as it applies to his first trial in a state collateral action, or to indirectly raise this issue via a claim of ineffective assistance of appellate counsel, would be time-barred under the PCRA. Therefore, Petitioner's 120-day speedy trial claim as applied to his first trial is "technically exhausted" and procedurally defaulted for purposes of federal habeas review.

This bar may be overcome, but only if Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure

---

[3]Petitioner could not viably raise his 120-day speedy trial claim in a post-conviction petition. Any such claim would clearly have been procedurally barred. *See* Utah Code Ann. § 78B-9-106(1)(b) ("A person is not eligible for relief . . . upon any ground that . . . *was raised* or addressed at trial or on appeal.") (emphasis added).

11

to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. *See also Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("[W]hen a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice."). This exception is satisfied only if Petitioner establishes *both* cause for the failure to present the merits of his claim to the Utah Supreme Court and actual prejudice. In order to meet the "cause" standard, Petitioner must show that "some objective factor external to the defense impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). "As for prejudice, a petitioner must show 'not merely that the errors of the trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Richie v. Sirmons*, 563 F. Supp. 2d 1250, 1272 (N.D. Okla. 2008) *aff'd sub nom. Richie v. Workman*, 599 F.3d 1131 (10th Cir. 2010) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982)).

"Petitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). But nowhere in his habeas petition does Petitioner mention, let alone attempt to establish in even the most limited way, that cause and prejudice or a miscarriage of justice exist that would allow federal habeas review of his procedurally defaulted claim. Therefore, the Court finds that, for this reason as well, further review of Petitioner's 120-day speedy trial claim is unwarranted.[4]

---

[4]Petitioner did raise a 120-day speedy trial claim in a timely filed post-conviction petition following direct review of his conviction and sentence after his second trial, but this claim applied only to the time between remand and retrial. It was not the same claim he raised on direct appeal after his first trial and it is not the same claim he

II.     **Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted.**

Petitioner argues in his second claim for relief that his trial counsel was "ineffective in failing to adequately represent the petitioner during trial, failing and/or refusing to file motions to preserve the petitioner's issue[s] for appeal[,] and failing to call witnesses that petitioner requested." Habeas Pet. at 21. He further argues that he informed trial counsel of 21 possible witnesses that could testify for the defense, but that counsel only called four witnesses. According to Petitioner, had trial counsel filed the motions and called the witnesses Petitioner had requested, "there would have been a different outcome at trial." *Id.* Petitioner fails to provide evidence or even a proffer of what the testimony of the additional witnesses would have been and how that would have provided a reasonable doubt that he was guilty of the conduct for which he was convicted.

Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted for purposes of federal habeas review because this claim was determined to be procedurally barred in state court. As explained, a petitioner seeking federal habeas relief must first exhaust his state

---

now raises in his current habeas petition. But even if the claim he now raises were the same claim he raised in his state post-conviction petition, i.e., that there was a 120-day speedy trial violation as applied to his second trial, that claim is also procedurally defaulted for purposes of federal review. The Utah Court of Appeals expressly determined that all of the claims raised in Petitioner's post-conviction petition, which would have included his 120-day speedy trial claim, were procedurally barred. Citing to the procedural bar provision of the PCRA, the Court of Appeals held that "each issue raised by [Petitioner] was known to him at the time of his direct appeal and could have been raised at trial or in his direct appeal but was not." *Pedockie V*, 2010 UT App 298 at *1. *See also* Utah Code Ann. § 78B-9-106(1)(c) (stating that a person is ineligible for relief under the PCRA if the ground relied on "could have been but was not raised at trial or on appeal."). The Utah Supreme Court subsequently rejected Petitioner's petition for writ of certiorari, thereby summarily affirming the Court of Appeals decision. Thus, Petitioner's claim was plainly rejected on the basis of a state procedural rule. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). Because Petitioner does not establish cause and actual prejudice for the default, even if the claim he now raises in his habeas petition were the same claim he raised in his state post-conviction petition, he has not met his burden of demonstrating that he may proceed with this procedurally defaulted claim.

remedies by properly presenting his claim "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever*, 36 F.3d at 1534. In Petitioner's case, he raised an ineffective assistance of trial counsel claim in his state post-conviction action following direct appellate review after retrial. The post-conviction court determined that Petitioner's ineffective assistance of counsel claim could have been, but was not raised on appeal and, therefore, was procedurally barred. *See* Utah Code Ann. § 78B-9-106(1)(c) (stating that a person is ineligible for relief under the PCRA if the claim raised "could have been but was not raised at trial or on appeal.").

Petitioner timely appealed the post-conviction court's ruling to the Utah Court of Appeals. On October 28, 2010, the Court of Appeals affirmed the post-conviction court's decision and expressly held that all of Petitioner's post-conviction claims, including his ineffective assistance of trial counsel claim, were procedurally barred. Citing to the procedural bar provisions of the PCRA, the Court of Appeals held that "each issue raised by [Petitioner] was known to him at the time of his direct appeal and could have been raised at trial or in his direct appeal but was not." *Pedockie V*, 2010 UT App 298 at *1. The Utah Supreme Court subsequently rejected Petitioner's petition for writ of certiorari, thereby summarily affirming the Court of Appeals decision that Petitioner's ineffective assistance of trial counsel claim was procedurally barred. Thus, Petitioner's claim was plainly rejected on the basis of a state procedural rule. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

When a petitioner "fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes,* 433 U.S. 72, 80, 84–87 (1977)).  As explained, the only exception to this rule is if Petitioner is able to demonstrate cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice.  *See Engle*, 456 U.S. at 129.  Again, however, nowhere in his habeas petition does Petitioner address this exception.  Because Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted and because he has not shown cause and prejudice for the default, further review of this claim is unwarranted.

## III.    Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted.

Petitioner argues in his third claim[5] for relief that his "[a]ppellate counsel was ineffective by failing to file an adequate and proper appeal on petitioner's behalf."  Habeas Pet. at 22. Petitioner claims that he wrote his appellate attorney and instructed him on what issues to raise in the direct appeal, but that appellate counsel failed to abide by Petitioner's instructions.  *Id.* at 20. As a result, Petitioner argues that his appellate attorney's performance "irreparably harmed [him] and his constitutional rights to be adequately represented by appellate counsel have been

---

[5] This claim is included in the section of the Petition that the Petitioner labels as "Ground Two:  Petitioner's rights were violated when he was forced to accept court appointed attorneys that did not adequately represent his best interest and would not file proper motions and preserve the petitioner's trial rights to allow issues to be addressed on appeal."

violated." *Id* at 22.  Petitioner fails to demonstrate that the arguments, if they had have been raised, would have changed the outcome on appeal.

Petitioner's ineffective assistance of appellate counsel claim is "technically exhausted" and procedurally defaulted for purposes of federal habeas review because he failed to raise this claim in his petition for post-conviction relief, the Utah Court of Appeals refused to consider it, and the Utah Supreme Court summarily affirmed the Court of Appeals decision.  Petitioner specifically alleged in his post-conviction petition that he received ineffective assistance of counsel based on alleged errors committed *during trial*, but nowhere in his petition did he ever allege, claim, or argue that his appellate attorney provided ineffective representation.  Because Petitioner's ineffective assistance of appellate counsel claim was not properly raised in his original petition, this issue was never mentioned, discussed, addressed, or ruled on in the post-conviction court's findings and conclusions.

Petitioner subsequently appealed the post-conviction court's decision to the Utah Court of Appeals.  In his docketing statement, Petitioner suggested that his court-appointed appellate attorney was ineffective for failing to raise all the issues Petitioner wanted raised.  The Court of Appeals refused to consider this claim, stating that Petitioner "did not sufficiently raise the issue of ineffective assistance of appellate counsel in his original petition for post-conviction relief; accordingly, we cannot consider the issue on appeal." *Pedockie V*, 2010 UT App 298 at *1.  The Court explained that a "claim for ineffective assistance of appellate counsel is distinct from a claim for ineffective assistance of trial counsel, especially if the two attorneys are different. Thus, reference to allegedly ineffective assistance of trial counsel is insufficient to raise an issue

16

of ineffective assistance of appellate counsel." *Id.* Because Petitioner only raised an ineffective assistance of *trial* counsel claim in his post-conviction petition, his "attempt to raise the issue of ineffective assistance of *appellate* counsel in his response to the State's motion to dismiss was inadequate." *Id.* (emphasis added).

Petitioner then sought certiorari review with the Utah Supreme Court, which was denied. The Supreme Court's denial of certiorari operated as a summary affirmance of the Court of Appeals' refusal to consider Petitioner's ineffective assistance of appellate counsel claim. Thus, Petitioner's ineffective assistance of appellate counsel claim was never properly presented to or considered by the Utah Supreme Court and, consequently, never expressly exhausted in state court. *See Brown*, 185 F.3d at 1124. Petitioner's only avenue for relief at this point would be to raise this claim in a successive post-conviction petition. But even if he were to attempt this, his claim would be barred by state procedural rules. The PCRA mandates that a person is not eligible for relief on the basis of any claim that "could have been, but was not, raised in a previous request for post-conviction relief." Utah Code Ann. § 78B-9-106(1)(d). Clearly, Petitioner could have raised his ineffective assistance of appellate counsel claim in his first post-conviction petition, but he failed to do so. Therefore, under the PCRA Petitioner is now prevented from obtaining state court review of that claim. But, as explained, when a petitioner fails to present his habeas claim to the highest state court and state-court remedies are no longer available because the petitioner "failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted." *Woodford*, 548 U.S. at 93. And claims that are technically exhausted are procedurally defaulted.

Federal habeas review of this claim is prohibited unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.   Again, however, nowhere in his habeas petition does Petitioner address this exception.  Because Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted and because he has not shown cause and prejudice for the default, further review of this claim is unwarranted.

## IV.  Petitioner's claim that his due process rights were violated is procedurally defaulted.

In his last claim for relief, Petitioner argues that his due process rights were "violated when the State failed to provide exculpatory evidence in the form of video surveillance from the store in which it was alleged petitioner being there [*sic*]."  Habeas Pet. at 22.  According to Petitioner, the surveillance video from Bell's gas station, where Nicole stated she escaped, would have shown that he was not present, as Nicole and the State claimed.  Had this evidence been disclosed, Petitioner argues that the outcome of his trial would have been different.  *See id.*

This claim is also technically exhausted and procedurally defaulted.  Although Petitioner was aware of the existence of the surveillance tapes as early as his first trial and certainly no later than his second trial, he never raised a claim, either on direct appellate review or in a post-conviction petition, that his due process rights were violated by the alleged non-disclosure of the tapes.  *See Pedockie I*, 2004 UT App 224 at ¶ 1; *Pedockie III*, 2008 UT App 417 at *1.  Therefore, this claim has never been presented to "the highest state court."  Furthermore, he can

no longer obtain relief in state court for his claim.  The time for raising claims on direct review, of course, has long since passed.  *See* Utah R. App. P. 4(a) ("[T]he notice of appeal . . . shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.").  Moreover, because Petitioner failed to raise this claim in his original post-conviction petition, his only avenue for state relief at this point would be to raise it in a successive post-conviction petition.  But even if he were to attempt to do this, his claim would be barred by state procedural rules.  As explained, the PCRA mandates that a person is not eligible for relief on the basis of any claim that "could have been, but was not, raised in a previous request for post-conviction relief."  Utah Code Ann. § 78B-9-106(1)(d).  Petitioner could have raised his claim in his original post-conviction petition, but he failed to do so.  Under the PCRA he is now procedurally barred from seeking state court relief on this claim.  "Where the reason a petitioner has exhausted his state remedies is because he has failed to comply with a state procedural requirement for bringing the claim, there is a further and separate bar to federal review, namely procedural default."  *Parkhurst*, 128 F.3d at 1370.

Consequently, federal habeas review of Petitioner's claim is prohibited unless he demonstrates cause and prejudice as a result of the alleged violation of federal law or that not considering his claim would constitute a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 750.  Again, however, although it is Petitioner who bears "the burden of showing cause and prejudice to overcome a procedural default," *Hinkle*, 271 F.3d at 245, nowhere in his habeas petition does he address any exception to the procedural default rule.  Because Petitioner's non-

disclosure of surveillance tapes claim is procedurally defaulted and because he has not shown cause and prejudice for this default, further consideration of Petitioner's claim is unwarranted.

### Certificate of Appealablility

When a district court issues a final order in a habeas proceeding in which the detention complained of arises out of process issued by a State Court, 2255, the court must address whether a certificate of appealability should be issued.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing that he was denied a constitutional right.  Accordingly, the court denies a certificate of appealability in his case for his Section 2254 motions.

### Conclusion

All of the claims Petitioner raises in his habeas petition either fail to present a federal question or are procedurally defaulted.  Consequently, the Court concludes that there is no legal basis to consider the merits of Petitioner's claims and dismissal is appropriate.

### ORDER

IT IS HEREBY ORDERED that Petitioner's petition for writ of habeas corpus is dismissed because the claims he raises either fail to raise a federal question or are procedurally defaulted.

The Clerk of the Court is directed to close this case forthwith.

DATED January 27, 2014.

BY THE COURT

JUDGE CLARK WADDOUPS
United States District Court